IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number CIV-07-1240-C |
| ) | |
| BOARD OF REGENTS FOR THE ) | |
| OKLAHOMA AGRICULTURAL AND ) | |
| MECHANICAL COLLEGES FOR ) | |
| LANGSTON UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brought this action against Defendant alleging claims of disability and age discrimination and retaliation pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. In addition, Plaintiff alleges that Defendant's actions give rise to a state law Burk[1] tort claim. Defendant filed a Motion for Summary Judgment, arguing that Plaintiff is not disabled and has not demonstrated that she was terminated on the basis of age or disability.

## BACKGROUND

Plaintiff, a Hurricane Katrina evacuee, was placed at Langston University's Oklahoma City campus as a front desk clerk by Workforce Oklahoma Career Connection Center (the Center). According to Plaintiff, the original worksite agreement entered into between the

---

[1] See Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24.

Center and Defendant provided that her employment was to continue at least through June 30, 2007.  Funding under this agreement was provided by the Workforce Oklahoma Hurricane Katrina Disaster Grant Program.  Plaintiff was over the age of forty at that time, and she states that both Defendant and the Center were aware that she suffers from vision loss in her right eye as well as a hip dislocation condition that prevents her from, among other things, walking and standing for long periods of time.

Plaintiff contends that soon after she began working for Defendant, her supervisor, Ms. Hall, instructed her to perform a variety of tasks that were outside her job description and that caused her discomfort and difficulty due to her disabilities.  After Plaintiff complained, Ms. Hall responded by giving Plaintiff a bad review, which Plaintiff claims was later retracted.  Because of the difficulties Plaintiff experienced with Ms. Hall, she requested a transfer in July 2006 to the Minority Business Development Center (the MBDC), also on Langston's Oklahoma City campus.  The MBDC is funded by the U.S. Department of Commerce.  Plaintiff had performed numerous tasks for Ms. Alexander, the MBDC's project director, who agreed that Plaintiff could be her administrative assistant.  The change became official in September 2006.  Plaintiff claims that Ms. Alexander was aware of her disabilities and that she received good evaluations while working for Ms. Alexander.

Plaintiff signed a contract with the MBDC on October 26, 2006, which provided that Plaintiff would serve as administrative assistant from November 14, 2006, to December 1, 2006, and would receive $1,000.00 in return for her services.  An attachment to the contract indicates that the funding would come from the U.S. Department of Commerce grant that

funds the MBDC and that Plaintiff was to work as a consultant until the MBDC received information on whether it would receive funding for 2007. Plaintiff claims that Ms. Alexander told her that her position would last until at least June 2007, but instead, on December 6, 2006, Ms. Alexander terminated her employment because the MBDC's grant was not renewed. Funding for the MBDC became available in February 2007, after Plaintiff was terminated, but Plaintiff was not re-hired. Instead, she claims that Mr. Lawson, the new Project Manager, hired a younger, non-disabled person.

## STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the litigation under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if it is such that a reasonable jury could find in favor of the nonmoving party. Id. The moving party bears the burden of demonstrating the lack of a genuine issue about any material facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once this burden is met, the nonmoving party must then respond and introduce specific facts demonstrating a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2). When deciding a motion for summary judgment, the court may only consider admissible evidence and must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" Scott v. Harris, 550 U.S. 372, ___, 127 S.Ct. 1769, 1774 (2007) (quoting United States v. Diebold,

Inc., 369 U.S. 654, 655 (1962) (per curiam)); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

The Supreme Court noted that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court went on to explain that, in this situation, there could be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## ANALYSIS

*1. Plaintiff's ADA Claim*

To make out a prima facie case of disability discrimination under the ADA, Plaintiff must demonstrate that she (1) is disabled as defined by the ADA, (2) is qualified, with or without accommodation, to perform the job, and (3) suffered discrimination because of her disability. Justice v. Crown Cork & Seal Co., Inc., 527 F.3d 1080, 1086 (10th Cir. 2008). Defendant argues that Plaintiff is not disabled according to ADA standards and that she did not suffer discrimination.

The ADA provides:[2]

---

[2] Both parties discussed at great length whether the 2009 Amendments to the ADA apply in this case. These amendments changed the definition of "substantially limits" that courts should

The term 'disability' means, with respect to an individual–

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). Plaintiff does not contend that either of the latter two definitions apply to her, and therefore the Court will confine its discussion to definition listed in subsection (A).

The evidence submitted indicates that Plaintiff suffers from two physical impairments. Therefore, the Court must determine whether Plaintiff's impairments substantially limit at least one major life activity. The ADA provides examples of major life activities, including sleeping, walking, and standing. 42 U.S.C. § 12102(2)(A). The Tenth Circuit identified three factors that courts should consider in analyzing whether an impairment substantially limits a major life activity: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact, of or resulting from the impairment." Rakity v. Dillon Cos., Inc., 302 F.3d 1152, 1158 (10th Cir. 2002).

The Court finds that Plaintiff has raised a question of fact with respect to whether she is disabled. Plaintiff's hip condition impacts her ability to walk for long distances or stand

---

apply in determining whether a person is disabled. ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553. Because the outcome of this case would be the same whether Plaintiff is found to be disabled or not, the Court declines to consider this argument in detail.

for long periods of time. The condition has persisted for quite some time, and there is no indication that upcoming treatments will be able to eliminate Plaintiff's impairment. While the Court cannot determine, based on the evidence presented, how severe is Plaintiff's impairment, she has presented evidence sufficient to demonstrate that some degree of impairment exists. Therefore, she has satisfied the first element of her prima facie case. Neither party has provided arguments relevant to the second element of the prima facie case, and the Court finds that the evidence presented indicates that Plaintiff is qualified to perform the job of administrative assistant. Attached to her response are a variety of certificates of completion of computer software courses. Additionally, Plaintiff's educational level and training indicate that she is certainly qualified to perform all the duties required of such a position. Therefore, Plaintiff has also satisfied the second element of her prima facie case.

In order for Plaintiff to establish the third element of her prima facie case, she must demonstrate that she was terminated because of her disability. This requires Plaintiff to "'to present some affirmative evidence that disability was a determining factor in the employer's decision..'" Butler v. City of Prairie Vill., Kan., 172 F.3d 736, 748 (10th Cir. 1999) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). While Plaintiff's burden is not a high one, "'it is also not empty or perfunctory.'" Id. at 749 (quoting Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995)).

After a thorough review of the evidence presented, the Court finds that Plaintiff has not met her burden of demonstrating that Defendant terminated her due to her disability. Viewing the evidence in the light most favorable to Plaintiff, it is clear that there was no

guarantee that the original grant funding Plaintiff's position would last beyond her termination date. Numerous letters between the Center and Defendant indicate that Plaintiff's funding would terminate at some point in November 2006. At that point, Plaintiff signed a contract with the MBDC providing that she would be paid from that program's grant from the middle of November until December 1, 2006. While Plaintiff claims that funding for the MBDC was imminent in 2006 when she was terminated, she has not submitted any evidence supporting this assertion. Instead, Ms. Alexander's deposition testimony indicates that funding for the MBDC was expected to end on December 31, 2006. Ms. Alexander herself moved to a position at the Rural Business Enterprise Program in 2007, further supporting the allegation that the MBDC would no longer be operating. The grant received in February 2007 was an unexpected bonus. Plaintiff was not re-hired in 2007, but she herself admits that she did not apply for a job at the MBDC. Although she claims that Ms. Alexander told her she would be recalled if funding became available, this in no way obligated the MBDC's new Project Director, Mr. Lawson, to hire her. Therefore, the Court finds that Plaintiff has not met her burden of showing a prima facie case of disability discrimination.

*2. Plaintiff's ADEA Claim*

In order for Plaintiff to succeed on her ADEA claim, she must demonstrate that her termination was motivated, at least in part, by her age. Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1114 (10th Cir. 2007). This may be done either through direct evidence of discriminatory intent or by raising an inference of discriminatory motive through

circumstantial evidence.  Id.  To raise such an inference, Plaintiff first bears the burden of proving a prima facie case of age discrimination.  Id.  Then, the burden shifts to Defendant to provide a legitimate, non-discriminatory motive for Plaintiff's termination.  Id.  If successful, the burden then shifts back to Plaintiff to demonstrate that Defendant's proffered reason is pretextual.  Id. at 1115.

To make out a prima facie case for age discrimination, Plaintiff must demonstrate that she was:  "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age."  Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008).  The Court finds that Plaintiff has met her burden here.  Plaintiff is within the protected class, all of her evaluations by Ms. Alexander indicate that she was performing satisfactorily, she was terminated from employment, and her replacement is a younger person.

The burden therefore shifts to Defendant to demonstrate a legitimate, non-discriminatory reason for Plaintiff's termination.  Defendant has clearly met its burden here.  The proffered evidence indicates that the original grant paying Plaintiff's salary was scheduled to end in November 2006.  Plaintiff's employment then continued until December 2006 pursuant to a separate contract.  Because the MBDC's funding expired at the end of December 2006, Plaintiff and Ms. Alexander both found themselves without a job.  Ms. Alexander was able to find a position at a separately-funded center on the University's Oklahoma City campus.  Although the Department of Commerce ultimately funded the

MBDC for 2007 and Ms. Alexander ultimately became the MBDC's Executive Director, this did not occur until mid-January 2007, after Plaintiff had been terminated and Ms. Alexander had sought other employment. Plaintiff was not re-hired because she never applied for a job and therefore the new MBDC Project Director, Mr. Lawson, did not consider her for a position.

Because Defendant has demonstrated a legitimate reason for Plaintiff's termination, the burden shifts back to Plaintiff to show that Defendant's proffered reason is a pretext for discrimination. "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Riggs, 497 F.3d at 1118 (quoting Rivera v. City & County of Denver, 365 F.3d 912, 925 (10th Cir. 2004)). Essentially, courts must consider "whether the employer honestly believed its reasons and acted in good faith upon them." Id. at 1118-19.

The Court finds that Plaintiff has not met her burden of demonstrating pretext. While Plaintiff claims that funding for the MBDC was imminent, expected, or had never lapsed, this is mere conjecture. Plaintiff claims that Ms. Alexander's statement during her deposition that the MBDC's funding for 2007 was within its three-year cycle indicates that funding was automatic for that year. However, Ms. Alexander also testified that she was not certain when the cycle began for the MBDC and that the funding for 2007 was a bonus. Additionally, the fact that Ms. Alexander herself sought employment with another program indicates that she

anticipated being unemployed after December 31, 2006. Therefore, Plaintiff has not met her burden of demonstrating that Defendant discriminated against her because of her age, and therefore her ADEA claim must fail.

*3. Plaintiff's* Burk *Tort Claim*

Finally, Plaintiff asserts that she may maintain a Burk tort claim because her termination violated Oklahoma's public policy as articulated by 25 Okla. Stat. §§ 1302 and 1901.[3] In order for Plaintiff to bring a Burk claim, she must demonstrate that (1) she was an at-will employee; (2) she was actually or constructively discharged; (3) in significant part due to a reason violating an Oklahoma public policy found in the state's constitutional, statutory, or decisional law, or in a federal constitutional provision setting forth norms of conduct for Oklahoma; and (4) no adequate statutory remedy exists to protect the Oklahoma public policy goal. Vasek v. Bd. of County Comm'rs of Noble County, 2008 OK 35, ¶ 14, 186 P.3d 928.

The Court finds that Plaintiff has not introduced evidence tending to show that she was discharged due to a reason that violates Oklahoma public policy. 25 Okla. Stat. § 1302 prohibits an employer from discharging an employee on the basis of age or handicap. 25 Okla. Stat. § 1901 prohibits discrimination in employment on the basis of handicap. As

---

[3] The Court notes that it could decline to exercise jurisdiction over Plaintiff's state law Burk tort claim. 28 U.S.C. § 1367(c)(3). However, because the trial date is less than two weeks away and the parties have already done a substantial amount of work in this forum, the Court chooses not to do so. Additionally, though Oklahoma law is currently unclear with respect to what constitutes an adequate statutory remedy pursuant to the Burk doctrine, this particular claim may be decided without the need to consider such unsettled questions.

previously articulated, the Court finds that Plaintiff has not demonstrated that she was terminated due to either age or disability, but instead her termination resulted from a lack of funding requiring closure of the MBDC.  Therefore, Plaintiff does not have a valid <u>Burk</u> tort claim.

## CONCLUSION

For the reasons set forth herein, the Court finds that the undisputed facts indicate that Plaintiff cannot demonstrate a prima face case of disability or age discrimination under the ADA or the ADEA.  Additionally, the Court finds that Plaintiff's <u>Burk</u> tort claim cannot succeed because she has not demonstrated that her discharge was in violation of Oklahoma public policy.  Therefore, Defendant's Motion for Summary Judgment (Dkt. No. 37) is GRANTED.  Judgment will be entered accordingly.

IT IS SO ORDERED this 24th day of February, 2009.

*[Signature]*

ROBIN J. CAUTHRON
United States District Judge